Nippon Steel v. United States Number 05-1502 Now tell me exactly what is the Commission's position on the only issue that your opponents raise, which is that the Court of International Trade should not have set aside the Commission's second decision? Well, Your Honor, the Commission's position is that although the Court did err in remanding back to the Commission... You say you concede that they erred in sending it back to the Commission. That's correct, Your Honor. Now, and if they erred in sending it back to the Commission, that means what they should have done was to have affirmed the Commission's second decision. Is that correct? We believe that the second remand determination was supported by some substantial evidence and should have been affirmed. Well, if it should have been affirmed, why did they ever get to the question of whether the third decision is supported by evidence? Isn't that enough to say the Commission should not have been required to make the third remand decision because sending it back for the third remand decision was an error, as you said? Yes, Your Honor, it was an error, but also it did come back to the Commission, and the Commission once again reweighed the evidence and came to the negative outcome. It basically represents its final determination. They didn't come to a different outcome. They had a diminished Commission. Let me ask you a question about that. As I recall from the briefs, there was a relatively short gap between the departure of the sixth Commissioner, I forget her name, and the arrival of the replacement. Isn't that right? Just a few weeks? Yes, that's correct. And I tell you, I find it really troublesome that in the first place, I guess there is the more usual system where an outgoing Commissioner continues to serve until the replacement actually arrives physically. I gather that that didn't happen here, that there was a period where the sixth seat was unoccupied. Is that right? Basically, the one Commissioner left prior to the vote taking place. However, the statute already addresses such a scenario and allows that a majority... But this is, here we have something that's been bouncing back and forth for a number of years. The stakes are not small. And in this period after the first Commissioner goes, before the replacement comes, appointed by the same political party, so that although one realizes the Commissioners are independent, at the same time, the entire structure is designed to reflect policy as well, is it not? So we have the six Commissioners, so I have six instead of an odd number. And in this gap, the majority then, now for the side that had been on the short end, up till now, moves out the decision. I would think, to me, I find that extremely troublesome. The successor has already been identified, apparently gone through all the procedures of the appointment, is turning up in the ensuing week, I think there was just a week, and the opinion comes out now, nobody's changed their vote, it's just that now there are five Commissioners instead of six, so it goes the other way. Is there a justification for moving it out so suspiciously speedily? No, Your Honor, the Commission didn't speed it up, it was basically the Court ordered us to issue our remand determination by... It was the Commission that made the decision, is it not? Nobody said you issue this opinion today or else? The Court ordered us to issue the remand determination by a certain date, yes it did, Your Honor. And it just happened that the Commissioner Miller left at the time that she did, the date wasn't set. But the Commission didn't go back to the Court and say, because of a peculiar situation, that one of our Commissioners has left, but we have a replacement coming in, we'd like to have the time for responding extended so that all six Commissioners could serve. It didn't do that, did it? No, Your Honor, and it doesn't have to under the Commission statute. The Commission statute specifically states that for a valid Commission action, only a majority of the quorum of the sitting Commissions is necessary for a valid determination. In fact, that is the holding in the Voss case. But the statute also says, if I recall correctly, that an outgoing Commissioner, even though the term has expired, the appointment term has expired, can continue to act until the successor is in place. That's right, Your Honor. And that didn't happen here. Commissioner Miller chose not to. And I believe that is also the holding of the Voss case, which basically indicates that individual Commissioners are up to their discretion whether or not to participate. And the Voss case is by the predecessor Court to this Court. So this all results from the peculiarity that the Commission, unlike most government regulatory agencies, has an even rather than an odd number of members. Most regulatory Commissions have an odd number. Securities and Exchange Commission and National Labor Relations Board, they have five Commissioners. So in the normal course of events, you're not going to have an equal division unless one Commissioner recuses herself. But here you've got three and three, and it's not unusual. I remember I sat in one case in which there were four Commissioners who recused, and by a vote of one to one, they adopted something. And since it was even, that was an affirmance. But let me ask you another question. We don't know, do we, how the Commission would vote today if this case were to be remanded again to it. We don't know whether they vote negatively or affirmatively. That's correct, Your Honor. But again, I must say that Congress already took this into account. That's the reasons for the provision where the majority of the quorum of the sitting Commissions basically constitute a valid action. In fact, your predecessor Court has already addressed this issue in the Voss case. We're basically in a remand situation where it came back and not all sitting Commissioners did participate that in fact that the remand decision constituted a valid Commission determination. So I believe it's already basically that the third remand determination is a valid determination. But why is this kind of like our decision in Altex, I'm not sure if I'm saying that name right, Altex, where they said that a change in the voting Commissioners did not amount to an independent policy change by the Commission and allowed this review of the intermediate decision in the case. I think it was the second one in that case. Because it wasn't a change in the policy, it was just a change in the Commissioners. Well, Your Honor, you also have to remember the posture of that case. What was being argued that was the interim remand decision being reinstated. And that's when they were saying, looking to see whether or not the Tom Mullen case would be applicable. In that situation, the majority that voted in the second remand determination, one of them was a new Commissioner that came aboard. And it was quite possible, it couldn't necessarily, as self-evident as it here, that it was independent of any errors by the court, because another Commissioner came and basically that majority adopted dissent of the prior determination, the first determination. Basically, yes, Altex wasn't a policy change, and basically the third remand determination here is not a policy change. However, the Commission should be able to have its ability to change its mind, so to speak, on remand, because it is, as this court has held, the ultimate determination basically determines material injury. Nobody changed their mind, did they? No, Your Honor. Okay. I see you're out of time. Thank you, Your Honor. Okay. Let's see. I think six, I guess, Reggie. We've used up some of Mr. Gurdie's time. Six. Okay. May it please the Court, my name is Greg Gerdes of Gibson, Dunn & Crutcher, and I'm here on behalf of the Japanese producers, Nippon Steel and JFB Steel. I'd like to begin my presentation today by briefly addressing the issue of when, in our view, the second or the third remand determination should be viewed as controlling. At base, we agree with the outcome advocated by the ITC, that is that the third remand determination is a controlling determination, but we disagree as to how to get to this result. As we understand it, the ITC's position is that there exists two valid determinations, the second and the third, and by contrast, our position is that there exists only one valid determination, the third. We, I think we're the lone party here defending Judge Eaton's decision that the second remand determination was not, in fact, supported by substantial evidence, and we would ask that this Court hold the same. That kind of leads me then to the main issue of why we believe the second remand determination was not adequately supported. As this Court is aware, there are two major aspects of the second determination that are in dispute, the ITC's volume analysis and the ITC's analysis of the likely impact of subject imports following revocation. In my presentation today, I would like to focus on the second issue, the impact determination, and what we believe are certain key problems with the Commission's analysis. The first problem involves the ITC's failure to satisfy the basic requirements of Section 1675A.A.4. Pursuant to this provision, the ITC is required, as part of its impact analysis, to evaluate several specific economic factors, including the effective revocation on the domestic industry's likely output, sales levels, market share, and profitability. In the second remand determination, the ITC stated that the domestic industry's performance with respect to these factors would be adversely impacted by subject imports following revocation. As Judge Eaton correctly recognized, however, the ITC identified virtually no specific evidence in support of this conclusion. That is to say, the ITC's analysis was based on speculation and not facts. Indeed, not only did the Commission not identify any record evidence with respect to these factors, but it effectively admitted to Judge Eaton that it could not do so based on the existing record. By itself, we believe that this failure by the ITC was a sufficient basis for a further remand. On its face, the statute is clear. The ITC must consider economic factors such as likely changes in production, sales, and profitability as part of its impact determination. As Judge Eaton recognized, the ITC did not carry out this task. Well, there was evidence. You're just saying it wasn't sufficient, it wasn't substantial. Well, I would actually—really, the ITC put out some conclusions, but it really didn't identify any evidence in support of those conclusions. Is there substantial evidence? I would say Judge Eaton didn't have a basis to determine that. Now, he said that it was not supported by substantial evidence, which was fair, because in his first remand, he said, well, you've given me some conclusions here. Point me to the evidence. No, you said ITC, but you're talking about the court. Oh, I'm sorry. You meant the CIT. Well, in the first—let's go back to the first remand determination, the ITC in its impact analysis— No, we're talking about the second. You're saying the second can't stand. Oh, I believe the second can't stand, but by way of background, in the first— Well, they collected more data between the first and the second, so we're just talking about the second. Actually, there was no further data collected between the first and the second. Or presented to the court. The court asked. The court asked that the ITC said, well, you've given me some conclusions, but you haven't given me any evidence. So in the second remand determination, the commission came back and said, well, we've tried to the extent possible, but they said given the nature of this review, we really can't give you a whole lot of evidence with respect to these specific statutory factors. I would add that that was proven to be incorrect because following the second remand, the ITC did open up the record, obtained a lot of information on point with respect to those statutory factors, and that evidence was cited by the new commission majority in the third remand. So I think the basic issue, as far as we see it, is that the commission, it had a conclusion with respect to the factors in the statute, but it didn't cite any evidence. And I think this is particularly important because you have a lot of contrary evidence, which indicates that even assuming and only assuming that you had significant volume and price effects, it's not a foregone conclusion in this case that the domestic industry would be injured. Counsel, so when the ITC said they find that the subject imports cause lower sales, production, capacity, utilization, employment, and profitability for the domestic producers, there's no evidence to support those findings? I don't believe so, no. At a minimum, the commission didn't identify that evidence, even though Judge Eaton had previously asked them to do so. Well, that's a different thing whether there's evidence in the record or whether the commission supported or cited it. The commission might not have cited any evidence, but there might have been adequate evidence in the record. There might be. We would take the position that there is not. But at the end of the day, we don't know because the commission didn't identify that evidence. It didn't say, well, here's the steps by which we get to our conclusion. It has to identify substantial evidence to get there. It just put out the conclusions. But when we review for substantial evidence, I mean, aren't we supposed to look at the record as a whole and determine whether there's substantial evidence? We're not even just bound to look at the specific things that the ITC or the CIT cited with regard to the issue, right? Isn't our standard of review to look at the record as a whole? That's correct. Determine substantial evidence. So whether the ITC cited it or not is irrelevant if it's in the record somewhere. I wouldn't say it because, I mean, these are such general concepts. Well, we'd find that they have reduced profitability or we'd find that they have reduced capacitization. These are kind of broad things. How do they get there? I mean, ultimately, it's the ITC that must be the decision maker. I suppose you would say that the commission didn't cite the evidence because there wasn't any. Yes. That's our basic position. You're correct, Your Honor. And even assuming there were, and we would disagree with that, the ITC didn't give it to anybody. But if there were, then it seems to me it becomes difficult to justify what the court did in saying there wasn't. I would respectfully disagree, Your Honor, because that would call upon the court to basically try to self-assemble, well, maybe this fact supports, but I don't know, there's some contrary evidence here. The district court, the trial court would have been the fact finder at that point, I believe, without the ITC identifying the specific facts that led to its determination. Again, particularly here where you have a lot of contrary record evidence, we believe overwhelming contrary record evidence, I believe. Okay. Thank you, Mr. Gerdes. Thank you. Ms. Cannon. Your Honor, if I might just go to the point Mr. Gerdes was making on the evidence on likely impact. There is ample evidence, not only in the record as a whole, but specifically set forth in the commission's decision on this point. I would refer you to the record, the appendix at page 630 to 631 in particular, where they find, number one, reports by U.S. purchasers and importers that U.S. customers would seek lower-priced imports from Japan and Italy if revocation occurred, which would lead them to lose sales as well as market share. That's a specific finding. Number two, evidence of the need for U.S. producers to operate at high passive utilization rates in this capital-intensive industry in order to recoup investments and to earn profits and their inability to do so if the imports resumed and increased in volume as they had pre-order. But, counsel, I don't think that he's arguing, and maybe I'm going to misinterpret it, but I don't think he's arguing that the ITC said these things. I think he's arguing there wasn't evidence to support these findings. I understood him to say that the ITC didn't really cite anything except some general statements that the profits might go down or we wouldn't be able to invest or we wouldn't be able to recoup our investments. And my point is there is very specific evidence and findings by the commission on those points in the record to the extent that that was his argument. Otherwise, there is ample evidence in the record beyond that cited by the commission that refers to all kinds of things, including testimony by the domestic producers at the hearing. We had executives from both Allegheny Ludlam and A.K. Steele testify as to all kinds of adverse effects they would suffer if revocation occurred. There was confidential details in their questionnaire responses. There's ample evidence on this, Your Honor, both cited and not referenced by the commission. And the other factor that I was going to mention was the cost-price squeeze that was going to lead to the profit decline, which was discussed in detail by the commission and has ample record support as well. The only other point I would make is that I believe where we started, the question was asked whether the commission agreed that the lower court shouldn't affirm the second remand determination, and I understood commission counsel to say that they did agree that that decision should have been affirmed, and I submit that that basically leads this court to the conclusion, I believe, that the commission also agrees that decision should have been sustained and there never should have been a third remand, and there's no reason to sustain a negative remand that never should have been issued. Thank you. Okay, thank you. The case is now under submission, but before you leave, I have a question for all counsel. I noticed that in the pages, everything is marked, every page is marked confidential. In some of the briefs, some subject matter is within brackets, some very specific subject matter, and I assume that that's intended to be confidential. However, there's page after page which just says confidential at the top with nothing in brackets. Are we to assume that unless it's bracketed, just in trying to write an opinion, that we know what's restrained, if there's any question in the minds of any of you as to what you really feel needs to be protected, will you tell us, write us a letter? Other than that, we will assume that what is in the double brackets is what you're really concerned about and that we just don't have to worry about the rest of it. So take a look at your briefs and at the appendix, whatever we have, to make sure that you're comfortable with that. Okay, thank you. The case is taken under submission.